[Civ. No. 10952. Second Appellate District, Division One.—December 15, 1936.]

JAMES OTIS et al., Appellants, v. OVERLAND TERMINAL WAREHOUSE COMPANY (a Corporation), Respondent.

Brobeck, Phleger & Harrison, and Duque & McKinley for Appellant.

E. E. Bennett, Malcolm Davis and Edward C. Renwick for Respondent.

WHITE, J., *pro tem.* — This action was prosecuted by plaintiffs against defendant Overland Terminal Warehouse Company for refusal to deliver certain sugar to plaintiffs in conformity with the provisions contained in a nonnegotiable warehouse receipt issued by plaintiffs. The cause was dismissed as to all defendants except Overland Terminal Warehouse Company and after trial before the court judgment went for defendant warehouse company, from which judgment this appeal is taken.

On May 9, 1934, 4,470 bags of sugar were deposited in the warehouse of Overland Terminal Warehouse Company by one Charles E. Jones and a nonnegotiable receipt was issued covering the same to "Otis, McAllister & Co., c/o Jones Brokerage Co." During the months of May, June and July, 1934, a total of 94 bags of such sugar comprising eight small lots, were withdrawn from the warehouse on orders signed "Otis, McAllister & Co., per Jones Brokerage Co., per Jones." These withdrawals were the result of sales activities by plaintiffs and Jones Brokerage Company. It does not appear that appellants gave any express directions to respondent company nor to Jones Brokerage Company as to the method of making a physical transfer of the sugar to the prospective purchasers. In the case of the eight small lot withdrawals, after respondent had recognized Jones'

withdrawal orders the latter advised appellants of the fact of withdrawal, delivery to the purchaser, and the terms for billing the commodity. Subsequently, on orders signed by Jones, 2,000 bags of the remaining consignment of sugar were pledged to the Continental Can Company, and 775 bags were pledged to the respondent company by Jones, acting for his own benefit. It is the sugar so pledged that is involved in this suit, which is predicated upon the refusal of respondent to deliver the commodity to appellants.

As grounds for reversal, among others, appellants contend that there is in the record no evidence of sufficient substantiality to show that Jones possessed authority as an ostensible agent to pledge the goods, nor to show a sale by the appellants to Jones entitling the latter to possession thereof. ■ The trial court found that on August 7, 1934, all of the sugar then on hand in respondent's warehouse, totaling 4,376 bags, was sold by appellants to Chas. Elsmere Jones, doing business as Jones Brokerage Company, and that thereafter Jones for a valuable consideration made the pledges hereinabove referred to. The court further found that at the time of the making of said pledges Jones was the owner of the sugar, had the right and authority to make the pledges and that the same were and are valid. We shall first give attention to this finding, because if it is supported by the evidence, and Jones was the legal and lawful owner of the sugar by purchase from appellants, that would be determinative of this appeal.

Section 9 of the Warehouse Receipts Act (Stats. 1909, p. 437; Deering's Gen. Laws, Act 9059) reads in part as follows:

"A warehouseman is justified in delivering the goods subject to the provisions of the three following sections, to one who is—

"(a) The person lawfully entitled to the possession of the goods, or his agent.

"(b) A person who is either himself entitled to delivery by the terms of a non-negotiable receipt issued for the goods, or who has written authority from the person so entitled either indorsed upon the receipt or written upon another paper."

Section 8 of the same act provides: "In case the warehouseman refuses or fails to deliver the goods in compliance

with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal.''

The contract of sale herein, if such it was, between appellants and Jones was based on an interchange of teletype messages. In part these messages were as follows:

''Will you sell us your stock here basis one sixty five in bond ex warehouse. Sixty and ninety day acceptances in order help us average our losses on present lot with understanding previous acceptances paid first GA.

''On what terms will you be selling GA.

''Regular sugar terms when possible GA.

''Would consider selling you on the terms U mention if U pay us and when you receive the money GA.

''This is satisfactory GA.

''Will reply definitely later but think probably OK GA.

''1.65 will show us severe losses on account of storage chgs etc think perhaps preferable for us both to sit on it longer as believe market will go still higher need 1.75 to break even dont you think market pretty strong GA Yes market is strong and advance is expected but unless we protect buyers prior to advance will have to hold about 60 days longer before can sell therefore adding to charges GA.

''Have already figures whse chgs to end August we will reconsider ad advise you further as we have open up several small buyers and wish to hold this business on account of future possibilities GA.

''Fine then we will hear from you later end.

'' . . . Are you taking all warehouse stock of present Javas GA.

''We will take it all at 1.70 and pay for as we sell and collect GA OK.''

There was also introduced in evidence, supplementary to and confirming the teletype messages, two letters dated August 3, 1934, and another dated August 9, 1934.

Section 1738 of the Civil Code provides:

''(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the

intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.''

Appellants insist that the intention of the parties was that Jones should not be entitled to possession, but should merely be allowed to negotiate a sale with a prospective buyer, obtain appellants' approval thereof and remit to the latter $1.70 per bag of sugar before being allowed to remove the same from the warehouse or deliver it to the purchaser. But when we have recourse to the teletypes, and particularly to the last two, we feel the circumstances of the case and the conduct of the parties were such as to indicate plainly that title to the sugar should pass immediately to Jones, who, being invested with such right, would have the power to dispose of it so that he could deliver the same to purchasers thereof. As a guide for ascertaining the intention of the parties, we find section 1739 of the Civil Code declaring in part as follows:

''Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

''Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, *and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.*''

It was only after inspection of the teletype messages and and letters that respondent warehouse company issued the pledgee receipts covering the 2,776 bags of sugar which appellants claim unlawfully deprived them of possession thereof, and we are of the opinion that respondent was justified in concluding that there was an absolute sale of the sugar by appellants to Jones, and that the latter was invested with complete dominion and power of disposition over it. The trial court's finding to this effect is in our opinion amply supported by the evidence.

By reason of the foregoing, it becomes unnecessary to discuss or decide other questions raised on this appeal.

The judgment appealed from is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 11, 1937.